## STEWART *vs.* THE STATE OF GEORGIA.

When four are indicted for disturbing religious service, and one of them, who participated in the disturbance, is convicted, a new trial will not be granted on the ground that the verdict is contrary to evidence, there being sufficient evidence to warrant the conviction.

Indictment for a Misdemeanor, in Milton Superior Court. Tried before Judge Rice, at the June Term, 1860.

At the August Term, 1856, of Forsyth Superior Court, John Brown, John J. Stewart, John Stewart and John Isom were indicted in the same bill, for the offence of misdemeanor, in disturbing and interrupting a congregation of free white persons, assembled for religious worship.

Pending the indictment, the county of Milton was formed, partly of the territory of Forsyth county, and said indictment was transferred to the Superior Court of Milton county for trial.

On the trial of John J. Stewart, alone, the following testimony was introduced:

### *Evidence for the State.*

David Buise, the prosecutor, testified: That on the night of the 4th of July, 1856, at Mount Pisgah Methodist meeting house, in what was then Forsyth, but now Milton county, whilst a congregation of white persons were then and there assembled for worship, and during the time of divine service, John Brown, John J. Stewart, John Stewart and John Isom came into the church and sat down together, in the back part of the house; and whilst the congregation were at prayer some one back where the defendants were sitting, groaned, and said amen, very loud. After prayer (as witness thinks), the defendants went out of the house, and round to the side of the church where the women were, and began to pat and dance, and say everything that was mean, and halloo like a peacock, and bellow like a bull, and curse the minister, which noise continued pretty much during the service. Witness does not know which ones of the crowd did the patting and dancing or made the other noise out of doors. Witness went out of doors to stop the disturbance, and John J. Stewart was sitting down at the root of a tree, and when

Stewart vs. The State of Georgia.

witness went up to him the parties named in the indictment came up and squatted down around the defendant now on trial. Witness said to John J. Stewart: "I have one request to make of you, and that is, just go away all of you, and stop this and let us alone;" to which the defendant replied by saying: "What do you mean?" Witness rejoined that, "I mean what I say." The defendant then told witness that if he, witness, wanted anything off of him he could get it. John Brown then jumped up behind the defendant and said to witness: "If you want a fight out of our crowd, I am the man." Witness then went back in the house. Afterwards, John Brown came back into the house and cocked a pistol, or snapped it, or let down the cock, so that everybody could hear it. The congregation were greatly interrupted and disturbed. There was a pistol fired off near the church after the congregation broke up. Witness did not see or hear the defendant on trial do or say anything that night that might disturb the congregation, except what he said to witness out of doors, and before testified to. The defendant came into the church with the other persons named in the indictment, and went out with them. Witness took the groaning and exclamation of amen, before stated, to be irreverent.

SAMUEL M. LAMBERTH, testified: That when the persons named in the indictment came into the church, and some one groaned during prayer, witness went up to where they were sitting, and asked John Stewart, who was making the noise? Said John Stewart asked if there was anything wrong in it? and witness told him he thought there was. He then asked witness if he wanted to fight? The other persons named then got up and went out, and the defendant now on trial went out after them. Witness did not see John J. Stewart do or say anything to disturb the congregation. There was considerable fuss outside the house after they went out.

William Thomason testified substantially to the same, as detailed by Lamberth, and also that after the congregation had dispersed and started home, witness, and others with him, passed the persons named in the indictment, some distance from the church. Some of them had liquor, and pulled out a flask or bottle, and asked the defendant on trial to drink, to which he replied: as it is you, I'll drink. They did not disturb or attempt to disturb us. I did not see the defendant do, nor did I hear him say, anything out of the

way, or that would or did disturb the congregation. He and the other persons named in the indictment left the place and went off together, after the congregation broke up.

### Evidence for the Defendant.

SIMEON SCOLES testified: That he was at the church on the occasion testified to by the witnesses for the State, and saw the persons named in the indictment when they came out of the house. When they came out John J. Stewart sat down at the root of a tree. John Stewart (Illinois John) and John Brown were patting and dancing, and the defendant on trial told them to quit it and behave themselves. The witness was sitting down by the tree with John J. Stewart, and was close by him all the time, and saw him all the time, and all that he did was to try to get the others to quit. The witness saw and heard all that he did, and he neither said or did anything to disturb the congregation. Witness does not recollect telling Daniel Buise, the day after the difficulty, that John J. Stewart said "go it, boys;" the said John J. Stewart did not say "go it, boys," as witness recollects. Witness did not go inside the house, but remained outside.

### Evidence for the State in Rebuttal.

David Buise·being re-introduced, testified, that on the day after the difficulty he was trying to get up evidence for the prosecution, and Mr. Scoles told him that all he heard John J. Stewart say was "go it, boys." Said Scoles was sworn as a witness before the magistrates, and did not so swear, but then testified as he now does in this case. When the persons named in this indictment first went out of the church, after Mr. Lamberth spoke to them, the others walked ahead, and John J. Stewart followed immediately after them.

Upon this state of facts the jury returned a verdict of guilty, against the defendant, John J. Stewart.

Counsel for defendant then moved for a new trial, on the grounds:

1. That the verdict of the jury in said case was contrary to law and the charge of the Court.
2. That the verdict was without sufficient evidence, contrary to the evidence, and strongly and decidedly against the weight of the evidence.
3. That the Court erred in admitting the evidence of William Thomason, as to what took place as the defend-

ant, and those with him, were leaving the church, and particularly what occurred a considerable distance from the church after the congregation dispersed, said evidence being objected to by counsel for defendant.

The Court overruled the motion and refused the new trial, and that decision is alleged to be erroneous.

Bell, Irwin & Lester, for the plaintiff in error.

Phillips, Solicitor General, for the defendant in error.

*By the Court.*—Lyon, J., delivering the opinion.

This plaintiff in error went into the church in company with three others; all are seated together, and all are drinking. One of the four makes a mockery of the service, and when some one of the congregation inquired who it was—for the purpose of suppressing or rebuking the offender—the plaintiff is the leader of the party to take it up. ' He inquires if there is any harm in it? And when he was told there was, which he well knew before, he asks the person who made the inquiry of him, *"if he* wanted to fight?" Was this proper, or was it not a disturbance? After this all go out of the house, and while the service is going on, some, if not the whole, engage in a scene of riotous and offensive noise and abuse that would disgrace wild savages. Another member of the congregation goes out and requests the plaintiff to go off from the church and let them alone. To this the plaintiff expresses astonishment; wants to know what it meant, and if anything is wanted off of him it could be got. This fellow was keen for a fight. The others run up and "squat" around, and one of them, at the conclusion of the plaintiff's speech, jumps up and exclaims: "If you want a fight out of *our crowd,* I'm the man." The man of peace and order had to beat a retreat. One of the crowd goes into the house and snaps his pistol, and thus the disturbance is kept up during the service. And as the congregation disperse this crowd stand in the way passing the bottle of whisky around, the plaintiff making himself particularly conspicuous. Can any one doubt, under this evidence, that his conviction was proper? We do not; and, as for myself, the only regret I have, is that the law did not authorize a

six months' imprisonment, and that all of its penalties could have been administered to him.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.